Your Honor, my name is Henry Spock and I represent Mrs. Sanchez in both cases against these two Mexican airlines, Mexicana and Aeromexico. Let me go first to the contract issue. In our brief in Mexicana, we set forth the language at page 13 and 14. What does it say? The price of the ticket may include taxes and fees which are imposed on the air transportation by the government authorities. The same agreement further states these taxes and fees, which may represent a significant portion of the cost of air travel, are either included in the fare or shown separately in the tax boxes of this ticket. Now, here you have a Mexican airline that knows no Mexican citizen is responsible for this tax. First, I want to go to something else. We've had no discovery, of course, because Judge Reel decided we didn't get discovery without deciding. The fact of the matter is my client in Mexicana was charged a tax. They denied the even flew her twice. And how do airlines set out their charges? Well, can I ask you, when did she buy the ticket? What ticket day she flew. Which is what day? Is that July 4, 2003? Yes, Your Honor. And the suit was filed September 28, 2007? Yes, Your Honor. We allege and I will argue that the statute of limitations was told. Why was it told? Why? Because this is an intentional violation of the contract. They knew that she was a Mexican citizen. Is there an exception for the rule for intentional violation? We believe, Your Honor, that the cases we've cited to you coming out of the Second District say that, in fact, if there is an intentional violation, that California now is going to atone. And we think those cases provide us with comfort here. Let's say you have what Oliver Wendell Holmes, Jr. called the bad man. He intentionally breaches the contract. How long is it told? Your Honor, we think it's told for that reason. It's told until the discovery. Until forever? It's told until the discovery. It's told until the discovery. For example, in the case of — Well, she knows when she gets on the plane, she doesn't know the money. She's Mexican. I'm sorry? She knows when she gets on the plane, she doesn't know a tourist tax to go to Mexico. She doesn't know she's been charged it. She's not a tourist. She's a Mexican. But she doesn't know she's been charged it. Your Honor, if you go to the websites now of these airlines, they tell you, as Deltas probably does, too, we've got a fare and we've got taxes. And they break it down. We wanted to get that information to put it in front of Judge Reel, but of course he denied this discovery. So they're separately stating they're charged for flying you and the taxes. But you cannot figure out what taxes you're being charged. Your Honor, Judge Reimer, if you go and buy the toothpaste and you put it on your credit card and it's $1.25 and you get a bill for $50, is that the sales tax? That's what's happening here. The customers are being told we will fairly and honestly honor our obligation to charge you the fare and charge you the taxes that you owe. And in these cases, we don't do that. We're in Aereo Mexico or Mexicana's contract of carriage. We think, Your Honor, the language I read you. Well, but that doesn't say we will give you notice of any and all taxes, charges, fees, or whatever. Actually, it does, Your Honor. Where? It says that they will set it out in the tax box on the ticket. I'm sorry? It's in Mexicana on page 14 of our brief. Well, I'm not at the contract. Your Honor, all the contracts here in these airlines are what you get when you go. This is our Mexicana ticket issued to her in Los Angeles. Yeah, and we're in that ticket. And the website. Yeah, but the website applies to obligations on the part of the user. If I go on Mexicana or Aereo Mexico's website and I buy a ticket or I do something else, I'm committing to them that I will pay everything that's due. Exactly. I know, but it's an obligation on me as the user. It's not an obligation. Just hold on, and you can respond. I'm saying it so I get your full answer. It's not an obligation on the part of the airline. The airline informs you that it will charge you what is due. Okay? In other words, otherwise, let's put it this way. You have to trust the airline that the bill they give you is correct, that, in fact, you're paying taxes which they never specify, although they give you an amount. They never specify. But that can be really rotten. But my question is, where do the airlines assume an obligation to their customers or potential customers to give them notice of what the law of Mexico is and to give them and to not collect the tax? Your Honor, they don't have to give their customers notice of the law of Mexico. They have to not collect the tax from someone from whom it is not due. And let me make one point. In neither Aereo Mexico or Mexicana, I don't know what Delta is saying, but in Aereo Mexico or Mexicana, these airlines are not saying they're required to collect the tax when they sell you the ticket. They're saying they do it. They do it for their convenience. They do it because other airlines do it. Well, they may do it for the convenience of their customers also. Well, it's not very convenient, Your Honor, if you charge me a $22 tax I don't owe. I mean, that's the whole point. Well, the convenience there, I'm thinking the refund procedure is critical, because the convenience there is suppose I show up at the airline counter and I buy the ticket and I say, oh, no, no, I'm tax exempt, so you shouldn't charge me the tax. Take that off. And the clerk says, I have no idea what you're talking about, sir. Which is likely to happen, Your Honor. Of course. And if by chance the clerk does know what I'm talking about, then I hold everybody else up in line while I'm showing documents and filling out forms. So as a practical matter, what the clerk is going to do is just put the number on a credit card, that's that, and there's going to be some form to send in and get the taxes back. And if I'm a frequent flyer, government flyer or something exempt, maybe my secretary will send in a form once a year or something. Your Honor, there is no refund procedure in either of these cases. On their websites or anywhere. Well, have you tried? Has anybody ever tried to get it back? I mean, isn't it kind of like, you know, that when you go to certain countries in Europe, whatever, you get this thing paid. If you take the time, which I basically never do, I can get the money back at the airport. And so that's just a net gain for the country, you know, whatever. This is a net gain for Mexico. I mean, it's not a net gain to the airline. Your Honor, the fact of the matter is that the customers don't know they've been charged the tax. Certainly if you're a Mexican, and let's assume you're a Mexican and you knew when you went there that you didn't know it. And the airline has represented to you in the contract of carriage that it's only charging you what's due. It's only charging what is applicable to you. How would you know you've been wrongly charged? Counsel, who does wind up with the money, the airline or the government? We don't know that, Your Honor, because, again, we don't have discovery. The airlines seem to say they send on, but we've seen different airlines say different things about when they pay it. How does the airline know that they're flying a Mexican? Because, Your Honor, two ways. Number one, they must, as is in our brief, find out the citizenship under the Homeland Security Acts and whatever. They have to find that out. Plus, you're entering Mexico. You have a passport. You have an identity document. So that the simple situation here. Do you have to show a passport now? When I've been to Mexico, I didn't show a passport. And I've known Americans named Sanchez and Mexicans named Yampolsky. Your Honor, if you check in for a flight, you often have to show a passport. They have the ability. They are required to tell the American government what your nationality is. Does that affect the outcome of the case, whether they keep the money or tender it to Mexico? No. Let me ask you this, then. You've told us several times Judge Reel denied you discovery. Yes, Your Honor. I'm not clear what discovery you would have obtained that changes the outcome of the case one way or the other. Well, first, Your Honor, we think that you can prove a contract in two ways. You can prove it by the hype verbo, what's in, what's there. And you can also prove it by conduct. We want to know whether or not, in fact, Mexicana or Aeromexico did, and I'm running out of time, but did, in fact, not charge certain people. Did, in fact, give them notice and just didn't give it to our client, whether they never did it. They've made a lot of allegations of facts that Judge Reel relied upon. They've described what they do. We don't know that that's true. We don't know whether they paid the money to the Mexican government. They may say they do or they may say they don't. We know one airline that doesn't pay on the people who fly down there but pays on the people who fly back, it says. So here you have the following situation. Why does that matter? It matters because I guess it matters if you get past the preemption on the restitution theory. If they don't have the money, then I don't suppose they do a restitution. Is that right? No, Your Honor. I think if they took it from us wrongfully, it doesn't matter what they did it. Just like the bank robber, it doesn't matter whether he burned it, sent it to the American government, or, you know, went to Vegas with it. He stole it. These people took the money without a basis in violation of our contractual rights. And we don't care what they did with it. They owe it back because they're not required to collect a tax on someone who doesn't owe it. Mexican government isn't saying collect a tax on everybody. That's not what the law says. They admit that's not what the law says. You can't collect it on two-year-old kids. You can't collect it on people with FM2, FM3 visas. You can't collect it on Mexicans. And yet they do that. They bury it in this breakdown, which, if you look at the website, says here's our fare. This is the price that, in fact, affects deregulation if we get to preemption. And we have to charge you these taxes. Well, we now know that one of those taxes that they charged our client and probably tens of thousands, if not millions, of other clients weren't due. And they just did it because they wanted to, because it was more convenient. But that doesn't excuse – I don't think convenience doesn't excuse a breach of contract. And let's talk a little bit about preemption. This is not – you have to find two things, I think. They have the burden of showing there's no contract, and they have the burden of showing that somehow allowing us to go forward and show that they've taken this money from their clients and asking for it back would basically defeat the deregulation plan of Congress. And, Your Honor, a close reading of your opinion can share us, which all three of you were on. I don't see how they can do that. How can they beat that burden? There's a presumption against – For starters, because it would change the way they do business. Your Honor – And that squarely fits the Chavez scheme. Your Honor, let's assume that you had an airline from an unpleasant country that just quoted you a fare and then charged you four times that on your credit card. Is that preemptive? Is there no relief? They say, we're Mali. We don't have any provision to give you the money back. We're Mali Airways. Yeah, we quoted you $250. We kicked you into giving us your credit card. That's an express contract to charge X and they charge you Y. Well, that's what's happened here. Well, maybe it is, maybe it isn't. They don't say we're only going to charge it to people who the Mexican government are going to collect it from. That's what we believe they do say. They say, we're going to charge you the applicable taxes, and this tax isn't applicable. In fact, one of the airlines, and I think it's Mexicana now, requires you when you buy a ticket to tell you on their web what nationality you are. Why do they do that? I don't know. Do they do that so they won't charge you the tax, or do they do that so they can have an advanced list for the Homeland Security people? They can find this out if they want to, or they can do something else. They cannot charge you the tax when you buy your ticket. Do you happen to know if there are any authorities in the sales tax area? This sort of thing comes up in sales taxes in both directions, fraud and sales taxes. It comes up with charging exempt people. It comes up with overcharging claim sales tax. It comes up with fraud the other way when people say, deliver it to my house in Connecticut. Well, they don't live in Connecticut. They live in New York, and they're trying to evade the New York sales tax. I don't know, Your Honor. I'm sorry. I wish I did. But our point, I think, these are contracts of adhesion. They have to be construed against the airlines in favor of the customer. And the breaches are clear. The breaches are admitted. There's no issue that they charge an inapplicable tax to my client. That's not even an issue. The contract is for applicable taxes? That's what we believe, Your Honor. What are the words? Aero-Mexico. I don't care what you believe. What are the words? The price of the ticket may include taxes and fees which are imposed on the air transportation by the government authorities. That's the words? Yes, sir. And that's on page 13 of our brief. This tax was not imposed. Taxes which are imposed by the authorities. Yes, Your Honor. And let me get Aero-Mexico. The pertinent site is not to your brief. It's to the contract. That quotes the 3ER. No, no, but what's the contract? It's in the excerpts page. Yes, it is in the brief. 3ER-000449-Z000456 and Sierra-00779-000781. We like to look at the original, not just the contract. Of course, Your Honor. I was just trying. We set them out because we thought this might be an issue. Still, where is it in the contract? That is the contract. That is in the contract, Your Honor. I'm not questioning you. I'm just asking, you know what, we got, I must have read 10,000 pages from my calendar. Okay? So I don't carry around all the excerpts. I've got the contract in front of me, and that's what I'm going to make my decision on. So my question is, where is it in the contract? Okay. It's right after Condition 11, I suppose, is what you're looking for. I'm sorry, Your Honor. Is it right after Condition 11? I would, Your Honor. Where it says the price of this ticket may include taxes and fees. Yes. Which are imposed on the air transportation by government. Yes, Your Honor. That's it. Authorities. That quote, and the next quote, which is, these taxes and fees, which may represent a significant portion. Right? They may be a significant portion of the cost of air travel, or either included in the fare or shown separately, right? Yes, Your Honor. You may also be required to pay taxes or fees not already collected. That's where you, that's what you're relying on. Yes. Anything else? No. For that language. However, what we don't know, because we were denied discovery, is what else may exist. I don't understand why you need discovery. I don't understand why you need anything else. It seems to me your argument is the price, which the states cannot regulate, is the ticket price, including taxes which are imposed by government authorities. This is not a tax imposed by government authorities. Therefore, it is not part of the price. I thought that was it. And I don't understand why you, why every time we ask you if that's it, we need to talk about other stuff and discovery and all this. Well, because, Your Honor, I mean, we think that that's right. We think we should win on that language alone. But what we don't know is whether, for example, there were other things on the website that would help us. I mean, usually you decide summary judgment after there's been discovery. He didn't grant preemption legal motion. Look. But we think we can win on this. As an example, Your Honor, their website currently. It looks to me like you've got a really clear argument. They've said what the price is, and it includes taxes which are imposed. It does not include taxes which are not imposed by the authorities. And now you're telling me, no, no, it's not that simple. There's a whole lot else. And we don't even know what's out there. And there's all this you're going to have to find out. And now I don't understand the argument anymore because I don't understand why you need anything more. We don't think we need anything more, Your Honor. This clearly applied at the time. This was clearly part of the contract at the time she bought the ticket. And that's admitted by the defendant. It states what the price is. Yes. And the price can't be regulated by the states. Your Honor. And the price. I guess what you're saying is, no, I'm making an argument too strong for your side when I say which are imposed has a negative pregnant that excludes which are not imposed. Right. So you're worried that you shouldn't win that easily. No, I think that all they can charge is whatever they say the price is, and that can be $10 million, whatever they want to say, plus the taxes. That's what they say. That's what they put up on their websites. That's the representation, the contractual undertaking they undertake. When I do the responsive undertaking and say I'll pay it, they're mutual promises. They'll charge me what's due. I'll pay what's due. They have an obligation, we believe, to do that. And that's the heart of our case. And we don't think, Your Honor, that their charging a tax that is not due affects at all the purposes of the ADA. And we think it is a contract obligation. Okay. You've now run substantially over your time in the one case, so perhaps you might take that into account. I think I will sit down and listen to your questions on preemption. I'll come around to the area of the Mexicana case. Mr. Saleng. May it please the Court, I'm Frank Saleng representing Mexicana Airlines. I'm also representing Aeromexico in the argument which follows. As Judge Reimer pointed out, the cases are very much the same, and I think the argument is spilled over. So with the Court's permission, what I'm going to do is just point out the difference between the two cases and then argue essentially for both, reserving a little time if I need to for a response to any subsequent argument. The only difference between the two cases are these. One is that the alleged contract language taken from the Aeromexico and Mexicana websites are different. And the second difference, which is a substantial one, is that in the Mexicana case, there is a statute of limitations defense which does not exist in the Aeromexico case. What's the difference in the contract language? Could you read the language for me? Yes, Your Honor. I have it in front of me. I actually excerpted both of it, and it comes from an excerpt of record page 662 in Aeromexico, and the Mexicana excerpt of record, I believe, is 780. The Aeromexico language is as follows. Quote, the user hereby accepts to be bound by the terms and conditions of purchase imposed by Aeromexico, including, comma, but not limited to, comma, the payment of all amounts when they fall due and the compliance of all rules regarding the availability of tickets, comma, products and services. The key language that I would ask the Court to focus on is that the language says, the user hereby accepts to be bound by. Could you read the language that refers to the price and taxes? I'm sorry? Could you read the language that refers to the price of the ticket and the taxes? Your Honor, what I've read to you is the only language which the plaintiffs have asserted as their basis. I didn't ask you what the plaintiffs have asserted. That's in the Aeromexico case. The tax language that Judge Kleinfeld is asking about is in the Mexicana case, right? You want the Mexicana case now? I want to know what language refers to the price of the fare in each case. That's the language for Aeromexico. That is the only language. Mexicana, the language is as follows. Quote, the price of the ticket may include taxes and fees, comma, which are imposed on the air transportation by government authorities, period. These taxes and fees, comma, which may represent a significant portion of the cost of air travel, comma, are either included in the fare, comma, or shown separately on the tax box, as boxes, on this ticket. Now, let me ask you about that phrase. Yes, sir. To me, when I read which are imposed, I read a negative pregnant into it. Which are imposed does not include which are not imposed. Which are things that are imposed are a different set of things from things that are not imposed. I infer from that that the price does not include taxes which are not imposed by the authorities. If do you see any problem with that, Your Honor? Well, here's the problem I have with it, Your Honor. I think that this, what this is, is a notice provision to a customer, not a contractual undertaking to do or not to do anything. It is a notice to the customer that the price of this ticket may include taxes, et cetera, et cetera. Where does this notice appear? This is on the website. Why isn't that part of the contract? I'm not suggesting it isn't part of the contract.  What I'm saying is that the language itself does not include any specific undertaking by Mexicana to do anything. It is simply as part of the overall information that's provided to the customer along with the purchase of the ticket, it provides the customer with notice that the price of this ticket may include certain taxes. Let's assume that's one way to read that. Yes. Another way would be as an undertaking, as Judge Kleinfeld says, that they won't charge you things that aren't collectible. Why shouldn't we construe it in favor of the passenger? Well, Your Honor, because I personally, as I read this, and two federal judges have agreed, I have to say. One, the district court judge in this case, and I have to say also that the district court judge in the McMullen case cited this language and said this is nothing but a vague representation. It is not. There's nothing in here that says that Mexicana shall ensure that the fees that are imposed by the Mexican government under Mexican law, that we're going to screen the passenger to make sure that these fees are due and payable by you or that you are a Mexican citizen or that you are or are not exempt. I think the contrast between the two cases is pretty interesting. The Mexican case refers specifically to price of the ticket may include taxes and fees which are imposed. Yes. The AeroMexico case makes no reference whatsoever to taxes and fees, if I understand that. AeroMexico simply says these are the user's obligations. Right. So that, in my mind, makes the Mexicana case a little closer case. Wouldn't you agree? I would prefer to have the AeroMexico user language in the Mexicana language, if that's your question.  But I still don't see that this language involves an undertaking by Mexicana to screen passengers, to determine their citizenship. But even if you're wrong about that, you still have the statute of limitations defense on Mexicana. That's correct, and I intend to get to that. But my colleague went well beyond the record in bringing into the argument a great many things about what other airlines do and what these airlines do. What is the big deal about the screening? The last time I flew abroad, I can't remember where I was going, Turkey or someplace, I had to show my passport. And in the summer, when Alaska Airlines stops in Vancouver, British Columbia, I have to carry a passport and show it when I get on the plane in Fairbanks. What's the big deal for them in doing the same thing with Mexicana? Well, Your Honor, it is done, and it's done for security purposes at the airport, post-9-11 in particular. But there is no, when people are checking in flights at the airport, there's no opportunity to go back and see what's been paid and what hasn't been paid. That's not a screening. No, the payment would be too much, but they must check a box or something or hit a key when I show my passport. Well, I have to say that, Your Honor, in this case, we don't know, and it's not part of the record, whether or not Mrs. Sanchez was flying on her U.S. passport or her Mexican passport. And that's part of the issues here where we're talking about class action here, where there's a lot into it. Tickets are purchased through travel agents, they're purchased through ticket offices, they're purchased online, and there's a variety of ways in which the tickets are purchased. This change would affect the way the airlines do their business. I would like to address the statute of limitations issue. Just two quick points. We pointed out in our brief that the tolling provisions, when you go beyond tort claims, the tolling provisions really apply in tort claims, they only apply in contract claims where there has been some fiduciary relationship or some active fraud or concealment. And I'm not asking you to accept my analysis of those cases. There is a district court case which summarizes California law on that, and it's the Perez and Sinas case, which we cited in our brief, 468 Fed subsecond 1127. If we accept the plaintiff's argument on the statute of limitations here, on a breach of contract case, arm's-length transaction, where all of the facts were in the public domain in terms of all related to public law, there was nothing hidden, no backroom maneuvering. If we accept that interpretation, then no statute of limitations would apply or begin to run until someone contacted a lawyer to find out what their legal rights were. I have been unable to keep the cases, to keep remembering which one is which. Is the statute of limitations case, the bar, is that the one that has the no taxes, that has the taxes imposed language, or is it the one that does not have the taxes imposed? The statute of limitations issue is Mexicana, and that is the case that has the language which states the price of this ticket may include taxes. They are one and the same. Aeromexico does not have a statute of limitations issue. The language in their contract or the language in their website says the user hereby accepts to be bound. And that's the one that does not have the limitations issue. It does not have a limitation. And, Your Honor, you also asked my adversary about is there any authority with respect to cases in which taxes have been collected or fees have been collected where it wasn't, where they were not due. And I would like to point out, Your Honor, that there are three cases involving the Airline Deregulation Act. The Buck case, the Statlin case, the Lehman case, all of which involved fees, government fees and taxes, which either should not have been collected or were not refunded. And all of those cases, the First Circuit, the Seventh Circuit, the District Court in New York, have all held that's preempted because it relates to price. And I heard you ask my colleague. I don't think relates to. Relates to is in the ERISA preemption clause. But I don't think the phrase relates to is in the airline preemption clause. The Supreme Court says that the words relate to imply the extremely broad preemption in ERISA. And as I recall in Wolins, because, among other things, there is no relates to, and there is a savings clause, the Supreme Court said that the preemption is only for prices, services, and I can't remember the third thing, and not to obligations undertaken by the airline. If I could make two points there, Your Honor. One, I'll give you the language from the Morales Supreme Court decision, which has been reconfirmed recently by the Roe Court. Relating to, taken from the ADA, means to stand in some relation, to have bearing or concern, to pertain or refer, to pertain or refer to prices. The plaintiff's allegations in this case repeatedly is that the fares, the fees were collected as part of the purchase price of this ticket. That's the plaintiff's admission. It's their allegation repeated. To say that this claim does not refer or relate to price is disingenuous, it's a disingenuous argument on the part of the plaintiff, when the very allegations which they're making in their pleading, and which they made in the joint status report to the court, is that the fare was collected as part of the price. And we've got, again, the same court of appeals and district court decisions, which have all said that you can't separate the two. Although they are separate components, they impact one another. They do have a bearing on each other. They are related to. They are referred to. And in this case, the plaintiff has specifically referred to the price as this being collected as part of the price. So if I could just sum up briefly, it's our position clearly that these single paragraphs taken from a website do not constitute any obligation on the part of the airlines to ensure that people are screened to determine their citizenship or that if they're not subject to Mexican law under that tax, that they are exempt. There is no contractual undertaking. So, therefore, you don't come under the Wallen's exception. But beyond that, as a matter of law, there is no contract claim, period. ADA aside, there is no contract claim because there is no contractual undertaking to do those things. What language is there where Mexicana says what the price of the ticket is? I'm sorry? What contractual language is there where Mexicana says what the price of the ticket is? I don't have that in front of me, Your Honor. I don't think it's in the record. What's in the record and what we focused on in our motion and our disappeal. What about AeroMexico? The same there, Your Honor. What we focused on on this appeal is we focused on a very narrow issue. The plaintiff came forward and said, this is the basis for our contract claim, this language. And we said, that's not a contract. That's not contractual language obligating the airlines to do what you said they have to do. The district court agreed. The federal district court judge in the Northern District of California in the McMullen case looked at the Mexicana language and also agreed, citing that in the McMullen decision. The AeroMexico. I'm asking about something different. Oh, I'm sorry. I'm not asking what promise the airline made to do something about the taxes or anything else. What I'm asking about is what price did the airline say the ticket would have? I can't answer that, Your Honor. I just don't know. You've got ADA preemption for prices, but you don't have ADA preemption for things other than prices. So I want to find out what's the price. Well, I'm not sure I understand the question, but I think there is preemption not only under the price component of the ADA, but also under the service component. And I think that, you know, notwithstanding Charis, because I think Charis was. . . Well, the service is to fly the person to Mexico, and the states aren't allowed to regulate whether they're entitled to a lunch or a meal if they're on the flight more than two hours, and the states can't regulate whether they have to let them out of the plane back in the terminal if they're on the tarmac for more than five hours. States can't regulate that stuff under service. Well, if an airline collects a fee on behalf of the Mexican. . . from the passenger on behalf of the Mexican government, and that facilitates what the Mexican government does, and it facilitates what the passenger is doing, I interpret that to be a service, and I think that is consistent. I'm asking at a less theoretical level. Somewhere the airline tells the customer the price for your plane ticket to Mexico is such and such, and I just want to hear the words. How much did this airline trip cost Ms. Sanchez? I don't know. Well, you know, you have to look at the ticket, right? Yes. Do we have a ticket? I don't know if the ticket is in the record, actually. I mean, I don't think Judge Kleinfeld is asking a complicated question. My answer is equally uncomplicated. I just don't know. And I don't know that it's in the record. We focused only on what the plaintiff alleged as being the contract that seems self-evident, that that did not involve a contractual undertaking, and we stopped there. And I'm sorry that I'm not able to answer that question. Thank you. Thank you. Okay, Mr. Rossbacher. I don't know how much time I have left, Your Honor. Well, you have probably. . . A couple minutes, anyway. Well, you have probably about 10 minutes. Thank you. But I don't think you need to take 10 minutes. The price, Your Honor. . . Which ticket are you holding up? I'm holding up Mexicana. And the Mexicana price had several components. It had the fare. Just read words. Don't describe. Just on the ticket, it reads XF $47.15, USD $275, UK $205.41. Okay, we just need American money. It doesn't say American money. No, it's the tax. Oh, I see. Sorry, I interrupted you. Then it says US $140.41. The ticket as issued was all in pesos, the price. Okay, and it lists these. . . it breaks out these taxes? Yes, Your Honor, on the ticket. Is this part of the record, this ticket? Yes. Can you tell us where it is? Can I have. . . I couldn't find it. I looked through my. . . That's what I most wanted to read. Volume 3, Your Honor, of our four excerpts of record, starting at 000437. Let me. . . And that was the Mexicana ticket. Now, let's see. Is that the one with the limitations problem? Yes, Your Honor. And what about the AeroMexico ticket? We don't have the ticket because we were denied discovery. We asked for discovery. We asked for her ticket. Judge Real said no. We asked for the. . . What does the ticket have to do with anything? Well, Your Honor, if the terms and conditions. . . This ticket says that if the terms and conditions include the website, include what's on there. Nobody's questioning that. The website is what it is. I'm just trying to respond to. . . Well, I'm asking the question. I mean, Judge Feinfeld may have a different problem from the one I do. I suspect he does. My question is what difference does the ticket make? Because the ticket includes, Your Honor, in it the conditions to contract. . . Which isn't at issue. Nobody is contesting that the website is part of the relationship between the passenger and the airline if it were used. The question is what does the website words signify? In addition, Your Honor, the words on the ticket are part of the contract, and we don't have that. But you haven't alleged. . . Sorry? Are they different? We don't know, Your Honor. We don't have it. We couldn't get it. On the website for Aeromexico, that's the one that does not have the statute of limitations issue, what language is there that speaks about the taxes? It's the fall due. But we believe that on the ticket there is language in showing the taxes and showing the price separately. And we asked for that, and we can't get it. Wait a minute. The Aeromexico website does or does not have words addressing. . . Oh, now it does, Your Honor. Yes, I have that. But it's not in the record because she bought this ticket several years ago. And we don't know what the website said then, and they refused to tell us, just as they refused to tell us what was on ticket envelopes or part of the contract. Boy, you have really now totally got me confused. I thought that you were proceeding based upon the language in the Aeromexico website. We are, Your Honor. But we, in addition, believe that we have a right to discovery to show that there are additional things that help us, for example, that will break out the price. Okay. Let me just say this once again, try to get something, a clear response. I'm trying to find a clear response. I know you are. I'm not saying you're not. But there's not much question. They had a fare. They collected a bunch of taxes. The issue is not how they were broken out, but whether, that being the case, it all has to do with price in the sense of Buck, Stratlin, and the Act. And, Your Honor, as Judge Alsop said in the Minneapolis case, to say that this relate to price and is preempted means that the airlines can charge you, it doesn't matter what they put on their website, they could have made the taxes $500 charging taxes that didn't exist anywhere. Well, but the same thing is true in Buck and Stratlin. So the First Circuit and the Seventh Circuit, both looking at very analogous situations, said, look, the whole thing is intertwined. The whole thing has to do with price. That's what matters is the bottom line. And that's preempted. Unless the Olins exception applies and there is a contract self-imposed contract obligation that is breached. Correct. And we believe in Mexico it's absolutely clear. Aeromexico is less clear. But we believe that we had a right to discovery to show that, in fact, we can prove a contract claim. But you can't. If the word, the contract claim is a matter of law. You look at it and see whether you can interpret the words of the contract. Are you saying that's not true? You're saying you don't have the whole contract. Is that right? Yes. You have the website part of the contract, but you don't have the ticket part of the contract. That's correct. Okay. Now, why could you not get the ticket? Because we asked for discovery and they refused to give us any discovery. So we had to move under 56F. And, Judge, we are not even willing to do that. 56F is a continuance motion. Okay. Did you make a discovery motion? We served discovery, Your Honor. No, you said they didn't give it to you. The normal course is then you make a motion to compel discovery. You said you make a motion for continuance. I'm asking you, did you make a discovery compulsion motion? It happened the opposite way, Your Honor. We served discovery. They made a motion for a protective order. We opposed it and brought a 56F motion saying, Your Honor, order them to give us the discovery and postpone the summary judgment until we have the discovery. We did that in both cases. Did you ask for the ticket? Yes. We asked for the ticket. We asked for the websites. And Judge Riel said no, or didn't say anything. I mean, there's not one word about it. Okay. Am I understanding correctly in that you don't think you can win based upon the website? No. I think we do win based upon the website, but I don't think we can lose based upon this Court deciding that the website isn't enough in the absence of discovery. That's my position. And I think that's fair. Okay. And what do you expect the ticket to show? We think that the website will show. What do you expect the ticket? We think the ticket will show that the fare is, in fact, like the $275. But there's no dispute about that. There is absolutely no dispute about the fare, the U.K., the or the taxes applicable in Areo, Mexico, whatever the label was. Anyway, there's no dispute about the way that appeared on the ticket. In addition, though, we think the websites will show. No. We're talking about the ticket. We don't have the whole website. Are you saying that you think there's some fine print in the ticket that might help you make your case? Yes. Okay. Now, why don't you just go to the airport and get a specimen ticket? Because we're four or five years later. Well, why didn't you do it four or five years ago? Your Honor, we sued when she came to us. But by that time, we were past the point where she had flown. And these ticket envelopes are changed. Your Honor, I really ñ what do you do if you bring a claim, you say, look, here is this. This raises a colorable claim that we have a contract. We believe it shows we have a contract. Give us the documents that relate to our client. And they say no. And the judge says, you can't have the documents that relate to your client. You can't have the documents that relate to your client's contract claim. Okay. I think we now pretty much understand what we ñ understand what we don't. Let me just go back. I want to be absolutely clear. We think when they represent on there, and they say in this that you're bound, you the passenger are bound by the contract with us, this website. So it's now a bilateral contract. When they say we're going to charge you and you must pay what's due, they have an obligation to be accurate. And there are no refund procedures with either of these airlines. Okay. Thank you, Your Honor. Thank you. Yes, thank you. All right. The matters just argued will both be submitted. And there it is. Okay. Keep going. Yes. So now the argument in Premier Nutrition.
judges: Rymer, Kleinfeld, Silverman